From the facts found and agreed, it appears that Lemuel Gilliam, son of the caveatee, being under age, by the direction of his father, who also placed a slave under his charge, was seated on and in actual possession of the land in dispute at and before the first day of May, 1806, made a crop there and continued in possession until the following January, when his father, who had removed with the rest of his family in East Tennessee, took possession, and L. Gilliam delivered up to him the crop, c., and set up no claim to a preference for himself. Gilliam, the caveatee, made an entry for 200 acres, on the 3d of August, 1807, No. 15. Morris was also actually seated on the land on the first of May, 1806, about 100 yards from where Gilliam resided, and also made his entry on the 3d of August, 1807, No. 33, and has entered a caveat against the claim of Gilliam, alleging that he is entitled to a preference by prior occupancy. About 57 acres of land is included in both surveys. Morris's survey is made, including his improvement in the centre of a square. Gilliam's is not in the centre, but, if it had been, the survey would have included all the same land now in dispute, and more of the land claimed by Morris. Various facts are stated which took place prior to the first of May, 1806. The questions presented for the consideration of the Court are: First, whether, in determining the right of preference by occupancy, the Court can go further back than the first of May, 1806, and inquire into the circumstances respecting the possession which took place prior to that day. Secondly, whether the possession of L. Gilliam, on behalf of his father, is such as is contemplated by the Act of 1806. Thirdly, whether Gilliam, the caveatee, by a non-compliance with the direction of the act to *Page 171 
survey so as to include the improvement in the centre of a square, ought to be prevented from holding the land in dispute, all of which would have been included, had the entry and survey been made so as to include those improvements in the centre. On the first point, the law is believed to have been settled. The people residing south of French Broad and Holston, by the constitution of this State, were entitled to the right of pre-emption and occupancy in that tract. In deciding on these claims, the courts uniformly refused to admit any inquiry as to the priority of possession before the 6th of February, 1796, the date of the constitution. On the same principle, occupancy, under the Act of 1806, to give a right of preference, must have existed at and before the first day of May preceding. A settlement on lands subsequent to that time was not recognized as giving any right of preference. Until the law passed, all those settlers were considered as trespassers. The legislature might have refused their sanction to such intrusion. There was no moral obligation to give them any privileges on account of meritorious services; but, as many families were settled on vacant lands, it was thought proper, to prevent the confusion that might arise from removing them or permitting others to acquire a title and eject them from the lands, to give them a preference of a small tract, and thus enable them to secure a peaceable residence for themselves. The legislature, therefore, having placed all who were settled on the 1st day of May, 1806, on an equal footing, the Court can not make any distinction between them. On the third point, no real difficulty is supposed to exist. Gilliam did not make his entry and survey so as to include his improvement in the centre of a square; that is, he included in his survey nearly 100 acres less of the land claimed by Morris than he would otherwise have done. Can Morris complain on that account? It is believed he can not. If a man does not pursue the direction of the law in *Page 172 
his survey, he, and he alone, is authorized to complain who is injured by that deviation. But the principal point insisted on in this case is, that, by the law of 1806, he who claims a right of preference must have seated himself and have been in actual possession at and before the first of May preceding, or as assignee of some person so possessed. The expressions used by the legislature seem to imply something more than having stock or property there; something more than occasionally bestowing his labor on the lands; something more than sending slaves there to reside and labor for him, while he has an actual residence and domicile elsewhere. If any or all of these things were done, the legislature did not recognize them as giving a right of preference, nor could it be foreseen what they would do on that subject. It seems to me that some person must have been seated on the lands, and in actual possession, capable of taking a benefit from the act, and whether he was in possession for himself, or by contract for another, the preference, so far as third persons are concerned, will be considererd as cast on him who was in actual possession. Nor can those third persons complain of any injury done to them, if the resident surrenders his possession to another, vests him with the rights conferred on that possession, and claims nothing for himself. In this situation I am inclined to think Lemuel Gilliam was placed. If the possession had been on his own account, the right of preference would have been completely secured to him; but having been put in possession by his father, and in that situation having acquired the right, he was under moral obligations not to defeat the purpose for which he was placed there, but to relinquish all claim on his own account, and, by delivery of possession and the fruit of his industry, transfer to his father all the advantages which had accrued by virtue of that occupancy. And it is not considered as straining the construction of the act too far to say that his father, the caveatee should, from *Page 173 
the time possession was taken by him, be considered as the assignee of his son, the former occupant. Though no express contract is stated in the facts agreed, yet the circumstances stated may be considered as evidence of an assent by Lemuel Gilliam; and it is not necessary such assent should be in writing to make it effectual. This construction of the act will place John Gilliam, the caveatee as assignee of his son Lemuel, on an equality with Morris, the caveator, and Gilliam having a priority of entry, the Court can not interfere and take it from him for the purpose of vesting it in Morris. The judgment of the Circuit Court must, therefore be affirmed.
And it was affirmed.